**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Julie Rutherford, | ) | |
| | ) | **ORDER DENYING DEFENDANT** |
| Plaintiff, | ) | **DEAN KESSEL'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 1:06-cv-081 |
| Robert Rutherford, Dean Kessel, and | ) | |
| Elizabeth McGregor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is defendant Dean Kessel's Motion for Summary Judgment filed on November 15, 2006. The Plaintiff filed a response in opposition on December 14, 2006. For the reasons set forth below, the motion is denied.

**I.   BACKGROUND**

This motion is based on a quiet title action that arises out of a personal injury action initiated in Burleigh County District Court by Dean Kessel ("Kessel") against Robert Rutherford and Jamie Leingang. On September 17, 2004, the state district court entered an ex parte temporary restraining order requiring Robert Rutherford to cease and desist from the sale of his assets. See Docket No. 6-5. On September 21, 2004, a lis pendens was filed by Kessel against three condominium properties recorded as being owned by Robert Rutherford. See Docket No. 6-6. The legal descriptions of these properties, hereinafter referred to as Parcel 1, Parcel 2, and Parcel 3, are as follows:

> ("Parcel 1")  Unit III, Park Place Condominium, created under a Declaration to Submit Property to a Condominium Project & Declaration of Restrictions, recorded

1

as Document Number 307631, erected upon Lot Two (2), Block One (1), Replat of Auditor's Lot Twenty-eight (28) and the West Half (W1/2) of Auditor's Lot Twenty-seven (27) of Park Hill Addition to the City of Bismarck, Burleigh County, North Dakota, together with undivided interest in the common elements and limited common elements declared appurtenant to such unit.

("Parcel 2")  Unit V, Park Place Condominium, created under a Declaration to Submit Property to a Condominium Project & Declaration of Restrictions, recorded as Document Number 307631, erected upon Lot Two (2), Block One (1), Replat of Auditor's Lot Twenty-eight (28) and the West Half (W1/2) of Auditor's Lot Twenty-seven (27) of Park Hill Addition to the City of Bismarck, Burleigh County, North Dakota, together with the undivided interest in the common elements and limited common elements declared appurtenant to such unit.

("Parcel 3")  Unit # 22 and Garage Unit 22 of Fox Hill Condominium, created under a Declaration Establishing Plan of Condominium Ownership, recorded as Document Number 319455, and amendments thereto, located upon Lot One (1), Replat of Lot Ten (10), North Hills First Addition to the City of Bismarck, North Dakota, together with the undivided interest in the common elements and limited common elements declared appurtenant to such unit.

On October 15, 2005, Robert Rutherford appointed his sister, Julie Ann Rutherford, as his attorney-in-fact under a Minnesota Statutory Short Form Power of Attorney. See Docket No. 12-3. On November 9, 2005, the Statutory Short Form Power of Attorney was recorded in the Office of the County Recorder for Burleigh County, North Dakota. The powers given to Julie Rutherford by Robert Rutherford included the right to transfer Robert Rutherford's property to herself, and the right to act with respect to claims or litigation on behalf of Robert Rutherford. On December 2, 2005, Julie Rutherford, acting through her power-of-attorney for Robert Rutherford, executed a warranty deed conveying Parcels 1, 2, and 3 to herself as grantee and subsequently recorded the deed on December 19, 2005. See Docket No. 6-7.

On April 27, 2006, the state district court entered a judgment pursuant to a jury verdict in favor of Kessel and against Robert Rutherford in the amount of $240,415.47 plus interest. See Docket No. 12-20. On September 28, 2006, Kessel filed an ex parte motion in state court to set

aside the transfers of Parcels 1, 2, and 3 made on December 2, 2005. Kessel alleged that the transfers were fraudulent. See Docket No. 12-22. On September 29, 2006, the state district court issued an order granting Kessel's motion and setting aside the transfers of Parcels 1, 2, and 3 by Julie Rutherford to herself. See Docket No. 6-8.

All three parcels were originally conveyed to Robert Rutherford via warranty deeds. The warranty deeds do not mention Julie Rutherford. See Docket Nos. 6-2, 6-3, and 6-4. Parcel 1 was conveyed to Robert Rutherford via a warranty deed on February 7, 2000. See Docket No. 6-3. The warranty deed certifies that the full consideration of $49,900.00 was paid for the property. The deed was signed by Robert Rutherford and was duly recorded in the Burleigh County Recorder's Office. Parcel 2 was conveyed to Robert Rutherford via warranty deed on November 6, 2000. See Docket No. 6-2. The warranty deed certifies that the full consideration of $35,071.96 was paid for the property. The deed was signed by Robert Rutherford and was duly recorded in the Burleigh County Recorder's Office. Parcel 3 was conveyed to Robert Rutherford via a condominium warranty deed on March 21, 1997. See Docket No. 6-4. The deed was signed by Robert Rutherford and certifies that the full consideration of $43,600.00 was paid for the property. The deed for Parcel 3 was also recorded in the Burleigh County Recorder's Office.

Julie Rutherford contends that the state court's order setting aside the December 2, 2005, conveyance is void, and that she provided the consideration to purchase Parcels 1 and 2, and that Robert Rutherford violated their written agreement to record title in Julie Rutherford's name. In support of her contentions, Julie Rutherford references an undated, handwritten agreement between Julie Rutherford and Robert Rutherford stating that Robert Rutherford, as debtor, agreed to record the title to Parcel 1 in Julie Rutherford's name. See Docket No. 12-4. The only reference to a date

is a handwritten note in the margin of the second page indicating that a check was received on January 15, 2000, from a First National IRA Account. See Docket No. 12-4, p. 2. The Marilyn Rutherford Estate Schedule of Non-Probate Assets shows that Julie Rutherford and Robert Rutherford were co-beneficiaries of the First National IRA Account. See Docket No. 12-8. Julie Rutherford also references undated handwritten and typed copies of a lease agreement between Julie Rutherford and Robert Rutherford. See Docket Nos. 12-5 and 12-6. The undated lease agreements refer to Julie Rutherford as the owner of Parcel 1. See Docket No. 12-6.

To support her claim of ownership in Parcel 2, Julie Rutherford references a handwritten and typed copy of a security agreement between herself and Robert Rutherford. See Docket No. 12-9 and 12-11. The security agreement provides that Robert Rutherford, as debtor, agreed to record title to Parcel 2 in Julie Rutherford's name. See Docket Nos. 12-9 and 12-11. The handwritten copy is dated January 15, 2000, and a handwritten notation provides "CK from First National Bank Grand Forks, $62k." See Docket No. 12-9. Julie Rutherford also references undated handwritten and typed copies of a lease agreement between Julie Rutherford and Robert Rutherford. See Docket Nos. 12-7 and 12-10. The lease agreements refer to Julie Rutherford as the owner of Parcel 2. See Docket Nos. 12-7 and 12-10.

Julie Rutherford also contends that, on or about February 7, 2000, she obtained either an estate or interest in, or lien or encumbrance upon, Parcel 3 and that on that date Robert Rutherford agreed to quit claim Parcel 3 to her. See Docket No. 12-1. Julie Rutherford refers in her affidavit to an agreement dated February 7, 2000, between Robert Rutherford and herself stating that Robert Rutherford would quit claim Parcel 3 to Julie Rutherford. However, the record is devoid of any such document. Julie Rutherford also references undated handwritten and typed copies of a document

entitled Security Agreement Contract in which Robert Rutherford granted a security interest in Parcel 3 to Julie Rutherford.  See Docket No. 12-12.

In further support of her claim to title in Parcels 1, 2, and 3, Julie Rutherford contends that she has furnished other funds to Robert Rutherford at various times and references four promissory notes made by Robert Rutherford and naming Julie Rutherford as the payee.  See Docket Nos. 12-13, 12-14, 12-15, 12-16.  The first promissory note, in the amount of $50,000, is dated May 2, 1999.  See Docket No. 12-13.  The second promissory note, in the amount of $50,000, is dated November 5, 1999.  See Docket No. 12-14.  The third promissory note, in the amount of $80,000, is dated July 14, 2000.  See Docket No. 12-15.  The fourth promissory note, in the amount of $70,000, is dated October 16, 2001.  See Docket No. 12-16.  The promissory notes do not indicate the purpose of the loans.

Julie Rutherford commenced this action on October 10, 2006, and seeks to quiet title in Parcels 1, 2, and 3.  See Docket No. 1.  On November 15, 2006, Kessel filed a motion for summary judgment.  See Docket No. 5.  Kessel contends that Julie Rutherford is collaterally estopped under the doctrine of res judicata from asserting a right to Parcels 1, 2, and 3 because of the state district court order of September 29, 2006, voiding the conveyance of Parcels 1, 2, and 3 to herself.  Further, Kessel contends that Julie Rutherford is barred under the parol evidence rule from challenging the original deeds that vested title in Robert Rutherford.

Julie Rutherford contends that the state court's order setting aside the December 2, 2005, conveyance is a void order and has no res judicata effect.  Julie Rutherford also contends that the state court had no jurisdiction over her because she was not a party to the original proceedings.  She also contends that the order is also void because it did not afford her due process of law because she

was not provided notice or a hearing before termination of her alleged property rights. Finally, Julie Rutherford contends that, because the December 2, 2005, conveyance was not properly set aside, she holds legal title to Parcels 1, 2, and 3 free and clear of Kessel's judgment lien and that, even if the December 2, 2005, warranty deed could be set aside, she has been the owner, or beneficial owner via an implied trust, of Parcels 1 and 2 since the year 2000.

## II. **STANDARD OF REVIEW**

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate

evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.  LEGAL DISCUSSION

#### A.  RES JUDICATA/COLLATERAL ESTOPPEL

It is well-established in the Eighth Circuit that the application of res judicata principles in a diversity action is a question of substantive law controlled by state common law. Lane v. Sullivan, 900 F.2d 1247, 1250 (8th Cir.); Hillary v. Trans World Airlines, 123 F.3d 1041 (8th Cir. 1997); see D'Amario v. Butler Hosp., 921 F.2d 8, 10 (1st Cir. 1990) (providing that the res judicata effect of a state judgment is governed by state law). North Dakota follows the general common law of res judicata. Res judicata "is a term often used to describe such doctrines as merger, bar, and collateral estoppel, or the more modern terms of claim preclusion and issue preclusion." Borsheim v. O & J Properties, 481 N.W.2d 590, 596 (N.D. 1992). Although collateral estoppel is a branch of res judicata, the doctrines are not the same. Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D. 1992).

True res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the litigation of claims or issues that could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. Id. Generally, "[c]ourts will not permit a litigant to try a part of his case and then, if he is disappointed with the outcome of the action, to have another day in court simply by alleging new claims or making a new demand for relief, when he could have made such demand in the prior action." Perdue v. Knudson, 179 N.W.2d 416, 421 (N.D. 1970).

Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1094 (8th Cir. 1996); see Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D. 1992)(collateral estoppel "generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit"). Before collateral estoppel will bar relitigation of a fact or issue involved in an earlier lawsuit, four tests must be met:

> (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Id. Neither party contends that res judicata, or claim preclusion, applies. Therefore, the Court will proceed with an analysis of collateral estoppel.

### 1. IDENTICAL ISSUES

The first element of collateral estoppel requires that the issue decided in the prior adjudication is identical to the one presented in the present action. Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D. 1992). Kessel contends that the issues are identical because Julie Rutherford is seeking relief from the ex parte order of the state district court. To determine if the issues are identical, the Court looks to the factual allegations underlying each action. See Simpson v. Chicago Pneumatic Tool Co., 693 N.W.2d 612, 616 (N.D. 2005)

(comparing the factual allegations in the present litigation to those in the previous action in determining whether the issues were identical).

The factual allegations underlying the state court's ex parte order are different from those Julie Rutherford asserts in the present action. The facts underlying Kessel's ex parte motion in state court were limited to the conveyance of Parcels 1, 2, and 3 by Julie Rutherford, through her power-of-attorney for Robert Rutherford, to herself. The issue before the state court was whether those land transfers by Julie Rutherford were fraudulent and should be set aside. In her complaint, Julie Rutherford asserts that she has a property interest in Parcels 1, 2, and 3 and bases her claim to that property interest upon several different theories, and correspondingly several different factual bases. While the December 2, 2005, conveyance is one theory upon which Julie Rutherford bases her claims, she also contends that she is the owner of Parcels 1 and 2 as of the time of the initial conveyances in 2000, and that at a minimum Robert Rutherford held title to Parcels 1 and 2 in trust for Julie Rutherford. In addition to the factual questions surrounding the alleged fraudulent transfer, Julie Rutherford's claims create factual questions involving the effect, if any, of the written contracts.

It is clear that Julie Rutherford's claims of a property interest in Parcels 1, 2, and 3 do not arise out of the same factual allegations and are not identical to those decided in the state court's ex parte order. Julie Rutherford's claims were not required to be litigated in the prior suit and several of the issues would not have been properly before the state court. The Court finds that the issues decided in the prior state court proceeding are not identical to the issues presented in the present action.

### 2. FINAL ADJUDICATION

The second element of collateral estoppel requires that there was a final adjudication on the merits in the previous action. Id. The state court issued an "Order Setting Aside Real Property Transfers" and held that title to Parcels 1, 2, and 3 remains in Robert Rutherford. The Court finds that the state court order is a final adjudication on the merits.

### 3. PARTY OR PRIVY

The third element of collateral estoppel provides that only parties or privies to the former action may be bound by the former judgment. Riemers v. Peters-Riemers, 684 N.W.2d 619, 627 (N.D. 2004). It is clear and undisputed that Julie Rutherford was not a party to the state court action. Therefore, the Court must determine whether she was in privity with Robert Rutherford. Privity exists if a person is "so identified in interest with another that he represents the same legal right." Simpson v. Chicago Pneumatic Tool Co., 693 N.W.2d 612, 616 (N.D. 2005). The North Dakota Supreme Court has stated:

> The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies, is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties.

Ungar v. North Dakota State University, 721 N.W.2d 16, 21 (N.D. 2006).

In Hull v. Rolfsrud, 65 N.W.2d 94, 96 (N.D. 1954), the North Dakota Supreme Court held that a defendant was not in privity with the plaintiffs in that case during a previous distribution decree and held that the defendant could challenge the plaintiffs' subsequent quiet title action. The

North Dakota Supreme Court reasoned that privity was lacking because the defendant was not related to the parties in any way, he was not made a party to the probate proceedings nor served with any notice of them, his rights were not in issue in the probate proceedings, and he had no right of control over those proceedings. 65 N.W.2d 94, 98.

Kessel contends that Julie Rutherford was in privity with Robert Rutherford during the state court action because she had a power-of-attorney on behalf of Robert Rutherford. Kessel contends that, through her power-of-attorney, Julie Rutherford could have directed the litigation in any manner she chose fit and could have challenged the state court's ex parte order after it was filed.

It is clear that Julie Rutherford had the right, through her power-of-attorney over Robert Rutherford, to participate in the state court proceedings. Through her rights of power-of-attorney over her brother, Julie Rutherford could have appealed the state court's order. However, Julie Rutherford's participation through her power-of-attorney for Robert Rutherford would have been limited to advancing Robert Rutherford's interest in the property. Because Julie Rutherford is asserting an interest in Parcels 1, 2, and 3 that is in direct opposition to Robert Rutherford's claim of title, her interest is not so identified with Robert Rutherford's interest so that it represents the same legal rights. While it is a close question, the Court finds that Julie Rutherford was not in privity with Robert Rutherford regarding the state court's ex parte order.

### 4. FAIR OPPORTUNITY TO BE HEARD

The fourth element necessary to establish collateral estoppel is that the party against whom collateral estoppel is asserted has been given a fair opportunity to be heard on the issue. Kessel contends that, although the motion to set aside the transfers of Parcels 1, 2, and 3 was brought ex

11

parte, Julie Rutherford could have requested a hearing on the ex parte order. Julie Rutherford argues that she was denied due process of law and did not have a fair opportunity to be heard because she was not served process in the action, she had no notice of the ex parte motion, and she was not provided a hearing.

      The Court finds that Julie Rutherford did not have a fair opportunity to be heard in the state court action on the issue of her asserted rights to Parcels 1, 2, and 3. Julie Rutherford was not provided with notice of the ex parte motion, nor was she given an opportunity to argue her position either at a hearing or via written submissions. The ex parte motion was filed by Kessel's attorney on September 28, 2006, and an order issued the next day. It is unclear why an ex parte motion was filed and an order issued when Robert Rutherford was obviously being represented by counsel in the underlying action. The Court further finds that the ability of Julie Rutherford to request a hearing after the issuance of the order does not suffice as a fair opportunity to be heard. As a non-party to the state court action, Julie Rutherford's recourse would have been limited to seeking a reconsideration of the ex parte order or file an appeal on behalf of Robert Rutherford. As previously discussed, the issues raised in this action require the resolution of underlying facts that were not raised in the state court action and that originate from Julie Rutherford. Even if Julie Rutherford would have requested and been granted a hearing through her power-of-attorney, the hearing could not have encompassed all of the underlying facts that are presently before this Court. In short, the Court holds that Julie Rutherford was not provided a fair opportunity to be heard in state court regarding her claims of ownership of Parcels 1, 2, and 3.

      In summary, the requisite elements for the invocation of collateral estoppel have not been satisfied. The issues raised in Julie Rutherford's pleadings are based on additional and different

factual bases and are not identical to the issue that was before the state court. While the state court order was a final adjudication on the merits, Julie Rutherford was neither a party nor privy to the state court action, and she was not provided a fair opportunity to be heard in the state court proceedings. Accordingly, the Court finds that Julie Rutherford is not barred by the doctrine of collateral estoppel from bringing a quiet title action.

### B.     FRAUDULENT TRANSFER

Since Julie Rutherford is not barred from bringing a quiet title action, the Court finds that Kessel is not entitled to summary judgment on the basis of collateral estoppel. Kessel also contends that the parol evidence rule prevents the Court from reviewing evidence presented by Julie Rutherford that challenges the deeds conveyed to Robert Rutherford in 2000. The Court finds that it unnecessary to address the merits of Kessel's parol evidence argument since that argument overlooks the December 2, 2005, transfer and assumes that the transfer was fraudulent. Because the state court's ex parte order does not collaterally estop Julie Rutherford's claims, the validity of the December 2, 2005, transfer must be resolved prior to an analysis of the effect, if any, of the various written agreements between Robert Rutherford and Julie Rutherford. While the transfer may have been fraudulent, questions of material fact remain at this stage.

To show that a transfer was fraudulent, Kessel must establish that the transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." N.D. Cent. Code § 13-02.1-04(1)(a). Section 13-02.1-04(2) of the North Dakota Century Code provides a list of factors to aid the Court in determining the actual intent of the transferring party. Kessel did not address any of these factors nor did he argue that the December 2, 2005 transfer was void. Having viewed the

facts in a light most favorable to Julie Rutherford, the Court finds that questions of material fact remain.[1]

IV.     **CONCLUSION**

The Court finds, as a matter of law, that genuine issues of material fact remain. For the reasons set forth above, the Defendants' Motion for Summary Judgment (Docket No. 5) is **DENIED**.[2]

**IT IS SO ORDERED.**

Dated this 15th day of February, 2007.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court

---

[1] The Court notes that this denial does not prevent a future motion for summary judgment upon the completion of additional discovery.

[2] In her response brief, Julie Rutherford mentions that there is no factual or legal reason as to why this Court should not grant summary judgment in favor of Plaintiff. Absent a motion before the Court, Julie Rutherford's assertions that she is entitled to summary judgment need not be addressed.